## CREANOR ET AL. V. CREANOR.

1. ASSIGNMENT: *Right of assignee of note given for personal property.*
   The right of the vendor of personal property to have the property seized and applied to the payment of the purchase price, under the act of March 9, 1877, is not personal to him, but passes to his assignee of the note given for the property.

2. STATUTES: *Construction of act of March 9, 1877, for enforcing vendor's lien on personal property.*
   The act of March 9, 1877, for the enforcement of the vendor's lien on personal property, does not authorize a judgment against the surety in the vendor's delivery bond, in the action against the purchaser, as in forthcoming bonds in actions of attachment.

ERROR to *Phillips* Circuit Court.
Hon. J. N. CYPERT, Circuit Judge.

*John C. Palmer*, for plaintiff in error:
Right to take the property sold is a personal privilege of the vendor and does not pass to assignee. *Acts of* 1877, *p.* 48. Mayfield had no day.

*M. T. Sanders*, defendant in error:
Cited act of 1877 (*supra*), and argued that the benefit passed to the assignee.

The action and bond is like that in attachment (*Gantt's Digest*, 416) authorizing judgment against the surety.

STATEMENT.

EAKIN, J. Cassa Creanor, a minor, and the assignee of a note for $325, given to a vendor of personal property by the purchasers, brought suit by her next friend against the makers, Peter Creanor and W. D. McMasters.

Creanor et al. v. Creanor.

The instrument was not negotiable by the law merchant, not being payable to order or bearer. The complaint described the property for which the note was given; alleged that it was still in the possession of defendants; and prayed that it be taken and held subject to the order of the court. A summons issued, incorporating the order, as prayed, which was duly executed, and the defendants gave bond to retain the property, with I. J. Mayfield as surety.

The defendants moved the court to quash the writ of possession, which motion was overruled.

Whereupon defendant, McMasters, answered, saying:

1.  That the assignment of note to plaintiff was without consideration, and :

2.  In effect, that the consideration for the note itself, had failed.

Peter Creanor made no defense.

There was a trial by jury, which found for plaintiff in the sum of $325, with interest from the maturity of the note, for which judgment was rendered against the makers of the note, and Mayfield, the surety on the retaining bond. A motion for a new trial, made by McMasters, was overruled, and defendants, with Mayfield, brought error. There is no bill of exceptions, and we can only examine as to error, on the face of the record.

OPINION.

This suit is based upon an act of March 9, 1877, which, amongst other things, provides: "That in any action, brought in the courts of this state for the recovery of money, contracted for property in the possession of the vendor," the court or clerk, on the petition of the plaintiff, duly verified, describing the property and its value, shall embody an order in the summons, directing the sheriff or

other officer to take the property described, and hold the same subject to the order of the court; in which case it is provided that "the defendant shall be entitled to give bond for the retention of the property, as in cases of orders of delivery of personal property."

It is contended that this right is personal to the vendor, and does not pass to the assignee of the note, and that, therefore, the motion to quash the order should have been sustained. The language of the act is too broad and general for such construction, and there is no error on this point.

It is not clear what, exactly, the legislature meant by the phrase, "*as in cases of orders of delivery of personal property,*" as there were several cases in which it had been made the duty of the officer to deliver property to parties or others, which had been taken in attachment, execution or replevin. By section 406 of Gantt's Digest, any person in whose possession property attached should be found, might claim to have it re-delivered to him upon his executing a bond in double its value, to perform the judgment of the court or have the property forthcoming when required. By section 416 the defendant himself might have restitution of property attached, or its proceeds if sold, by executing a bond to perform the judgment of the court; by the execution of which bond the defendant appeared to the action. By section 2658 the owner of personal property taken in execution, might have it returned by giving a forthcoming bond, to produce the same on the day of sale, which bond on its return and forfeiture had the force and effect of a judgment. By section 2671 any person other than the defendant might claim, and have restored to him, property taken in execution, still subject, however, to the charge of the levy, by giving bond to the plaintiff in double value, to pay said value with ten per cent. interest, if the property

1. ASSIGN-MENT:

Right of assignee of note given for personal property.

2. STATUTES Act of March 9, 1877, for enforcing vendor's lien on personal property, construed.

be adjudged property subject to execution. The plaintiff might move for judgment on such bond against the obligors on ten days' notice, and have a jury impanneled to try the issue. And by section 5042 the defendant in replevin was entitled to restoration of the property taken, upon executing a bond to perform the judgment of the court. These were all orders in some sense, "of delivery of personal property," and all more or less analogous to the one in question, but attended with quite different incidents and consequences. It is to be remarked generally, however, that at the time of the adoption of Gantt's Digest there does not seem to have been any provision for rendering judgment against any of the sureties on these bonds, in the principal action, at the same time with the defendants.

Afterwards, by act of November 10, 1875, it was provided that in cases where an attachment should be discharged upon the execution of a bond as provided by section 416 Gantt's Digest, (*supra*), and the plaintiff should recover, the judgment should be rendered against the defendant *and his sureties* in the bond. But if the defendant had given a retaining bond as provided by section 406, *and the attachment should be sustained*, then the jury on demand of the plaintiff, should assess the value of the property attached, and the court, in addition to the judgment rendered against defendant, should render an additional judgment and direct execution against the surety for so much of said judgment as would not exceed the value of the property, unless the surety should deliver up the property to be sold, and in case the plaintiff should not be able to make the full judgment out of the defendant.

The proceeding in the case now in judgment, is in its nature, like a specific attachment, and the bond provided seems most analogous to that authorized by section 416 of

Gantt's Digest; and the immediate effect of it is the same; that is, it enables the defendant to retain the property absolutely, without any express obligation absolute or conditional to have it forthcoming. Upon the other hand the *language* of the statute is precisely that used in section 5035 to describe the writ of replevin, and construing the statutes together we might well suppose the legislature had that writ in view, and such a bond as is provided by section 5042 (*supra*). The effect of this bond is the same as that also.

Inasmuch, however, as this proceeding lacks one essential feature of replevin, in that the plaintiff is in no case entitled to have the specific property, and looking more to substance, than the form of expression, we conclude the intention of the legislature to have been to make this an action of attachment and provide for such a bond as that authorized by section 416. At the time the act under consideration was passed it was one of the *consequences* of such a bond, and *its legal effect*, to authorize a judgment in the action against the security with the principal. Did the legislature mean to adopt those consequences and legal effect?

The proceeding against sureties in case of bonds executed under the said section, last named, is a harsh one, in derogation, not only of the common law, but of the ordinary practice under the new system in case of bonds executed in the progress of a suit. The remedy given should not be extended beyond the express language or obvious purpose of the legislature. The design should be palpable. We do not see such design in the language of the act. The language used is that defendant may "*give* bond for the retention of the property, as in cases of order, etc." There is no provision made, that the bond shall authorize a judgment, after given, as in case of the bonds alluded to.

It is consistent with the language to allow the bonds to be *given* as they originally were in attachment, without attaching to them consequences afterwards affixed to attachment bonds. The act of November 10, 1875, is confined to bonds provided by section 416, and we can not extend it by implication to bonds made under another act subsequently passed. We can not supply legislation to meet supposed intentions, or to carry out the policy of similar cases, if it be penal in its character and in derogation of the general rules of law. If the legislature shall think fit to amend the statute, it has the power at any time.

There was error in rendering judgment in this action against Mayfield.

In the absence of any bill of exceptions, we must hold the judgment correct against the makers of the note. There can be no object in remanding the cause.

Reverse as to Mayfield, and affirm in all else.